WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Randy M. Montgold, | No. CV-18-02074-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff's appeal of the denial of his application for social security disability benefits. Plaintiff makes the following claims of error on appeal: 1) the Administrative Law Judge ("ALJ") failed to give germane reasons for discounting the testimony of 3 lay witnesses; 2) the ALJ failed to ask the appropriate questions of the vocational expert; 3) the ALJ failed to discuss Plaintiff's cubital tunnel syndrome; and 4) the ALJ failed to explain his decision sufficiently with respect to Plaintiff's mental residual functional capacity. (Doc. 19 at 1). Plaintiff seeks, "remand[] for further proceedings including a de novo hearing and new decision." (Doc. 19 at 25).

**I.  Legal Standard**

    **A.  Standard of Review on Appeal**

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation omitted). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Reddick v. Chater*, 157 F.3d 715, 720 (9th

Cir. 1998) (internal citation omitted). In other words, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (internal citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the" ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citations omitted); *see Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted

by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### B. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show that, among other things, he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### C. The Five-Step Evaluation Process

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick*, 157 F.3d at 721. A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

1. First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

2. If the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.*

§ 404.1521(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

3. Having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's "residual functional capacity" ("RFC") is the most he can still do despite all his impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

4. At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work he previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

5. At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his "age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This

1 | includes medical opinions, records, self-reported symptoms, and third-party reporting. *See*
2 | 20 C.F.R. §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

## II. Claims of Error on Appeal

### A. Lay Witness Testimony

Defendant recounts the law governing consideration of lay witness testimony as follows:

> ALJs must consider testimony from lay witnesses submitted on behalf of a claimant. 20 C.F.R. § 416.929(c)(3). The Commissioner's regulations do not require any explicit discussion of lay witness testimony in the ALJ's decision. *See* Social Security Ruling (SSR) 06-03p, available at 2006 WL 2329939 (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

(Doc. 23 at 5).

However, Plaintiff notes that, in this Circuit, notwithstanding the regulations,

> …in 2006 this Circuit held that the ALJ had erred by neglecting to comment on competent lay witness testimony. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). … an ALJ may only discount the opinion of a lay witness if he provides germane reasons for doing so. … *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)); SSR 06-03p.

(Doc. 24 at 4-5).

#### 1. Sherry Montgold

Plaintiff's mother offered testimony regarding Plaintiff's abilities. The ALJ recounted this testimony in his opinion. (Doc. 18-3 at 23-24).[1] When the ALJ first begins discussing Mrs. Montgold's testimony, her refers to her as claimant's mother. (*Id.* at 23). However, when the ALJ makes his credibility assessment of Mrs. Montgold, he discounts her observations because, "… by virtue of the relationship as the spouse of the claimant, she cannot be considered a disinterested third party." (*Id.* at 24). Because the ALJ seems to have had some confusion about who Mrs. Montgold is in Plaintiff's life, and discredited her based on that relationship, the Court finds the ALJ did not give a reason germane to this witness for discounting her testimony.

---

[1] All page citations are to this Court's electronic record, not the pages of the administrative transcript.

### 2. Melba Media, R.N.

Ms. Media, who examined Plaintiff, offered her opinions about Plaintiff's limitation. (Doc. 19 at 9). The ALJ gave this opinion, "little weight" because, "Ms. Media is not an acceptable medical source pursuant to the rules and regulations of the Social Security Administration, so her opinion cannot be given great weight." (Doc. 18-3 at 27).

Plaintiff argues that Ms. Media is the equivalent of a lay witness; thus, the ALJ must give a germane reason to discount her testimony. Defendant does not dispute that Ms. Media qualifies as a lay witness. (Doc. 23 at 6). Defendant argues that the ALJ gave Ms. Media's opinion little weight because it conflicted with other evidence. (*Id.* (citing Tr. 26)). The Court cannot ascertain the basis for Defendant's argument as the ALJ never makes this statement that the Court can locate.

Thus, the only reason articulated by the ALJ for discounting Ms. Media's opinions is that she is not an acceptable medical source. As this reason would apply to all lay witnesses, but lay witness testimony is nonetheless to be considered, the Court finds that the ALJ failed to give a germane reason for discounting this Ms. Media's testimony.

### 3. Joseph L. Burridge, Vocational Evaluation Specialist

Plaintiff argues it was error for the ALJ to fail to mention the opinions of Joseph L. Burridge, a vocational evaluation specialist. (Doc. 19 at 14-15). Defendant does not dispute that it was error for the ALJ to fail to mention the testimony of this lay witness. (Doc. 23 at 7). However, Defendant argues that the error was harmless. (*Id.*). The Court will discuss in the context of the vocational expert below whether this error was harmless.

### B. Vocational Expert's Testimony

Plaintiff makes two claims of error regarding the vocational expert's ("VE") testimony. The first claim of error is that the jobs identified by the VE as being jobs Plaintiff can perform are inconsistent with Plaintiff's residual functional capacity. The second claim of error is that the hypothetical containing Plaintiff's residual functional capacity posed to the VE by the ALJ was inaccurate because the ALJ failed to assess and include Plaintiff's cubital tunnel syndrome.

### 1. Jobs Identified by the Vocational Expert

Plaintiff claims that the VE erred in identifying the jobs Plaintiff could perform in part because Plaintiff was limited to "simple, repetitive takes," but all but one of the jobs identified by the VE required Level 3 Reasoning. (Doc. 19 at 22). Plaintiff then notes: "In 2015, this Circuit held, '[t]oday, we join the Tenth Circuit and hold that there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning.' *Zavalin v. Colvin*, 778 F.3d 842, 846–47 (9th Cir. 2015)." (*Id*.). Plaintiff argues it was error for the ALJ to not ask the VE how Plaintiff's limitation to simple, routine and repetitive tasks would impact his ability to perform the jobs the VE identified. (*Id*.). Defendant did not respond to this argument. (Doc. 23 at 8). In view of the holding of *Zavalin*, the Court agrees that the ALJ's failure to seek clarification on this point was error.

Additionally, Plaintiff claims it was error for the ALJ to advise the VE that Plaintiff had a high school diploma without specifying that the diploma was earned in special education classes. (Doc. 18-3 at 80). Because the VE is supposed to take into account Plaintiff's education, the Court finds the failure to fully inform the VE on this point was error.

Plaintiff also argued it was error for the ALJ to determine that Plaintiff could perform the jobs of cashier II, self service gas station cashier, toll booth collector, and ticket taker when Plaintiff was limited to "only incidental contact with the public." (Doc. 19 at 24). Citing nothing, Plaintiff states, "It is difficult to imagine how the kind of contact required with the public in these jobs could possibly be 'incidental.'" (*Id.*).

The Court has read the transcript and notes the VE specifically asked the ALJ to repeat and clarify Plaintiff's limitation with respect to contact with the public. (Doc. 18-3 at 82). The ALJ repeated the "incidental only" limitation. (*Id.*). The VE nonetheless determined, in his expert opinion, that Plaintiff could perform these jobs. As a matter of ordinary English, the Court tends to agree with Plaintiff. However, nothing in this record or the law cited by Plaintiff would permit this Court to substitute its judgment of what

would be "incidental" for the opinion of the expert.

Nonetheless, the ALJ did have the benefit of another vocational evaluation from Mr. Burridge, which the ALJ failed to discuss. Given the ambiguities between Plaintiff's residual functional capacity and the testimony of the VE in this case, the Court cannot conclude that the failure of the ALJ to consider or give germane reasons for disregarding the testimony of another lay witness regarding Plaintiff's vocational abilities was harmless error.

### 2. Plaintiff's Residual Functional Capacity – Cubital Tunnel Syndrome

Plaintiff argues on appeal that the hypothetical posed to the vocational expert was inadequate because it failed to include any limitations based on Plaintiff's cubital tunnel syndrome. (Doc. 19 at 21). More broadly, Plaintiff argues that the ALJ erred at Step 2 because he failed to consider Plaintiff's cubital tunnel syndrome. (*Id*. at 19-21). Specifically, at Step 2, the ALJ failed to mention cubital tunnel syndrome which Plaintiff argues is moderate to severe. (*Id*. at 19).

Defendant responds and argues that, "A claimant does not establish that the Commissioner's step five determination is incorrect by simply stating that the ALJ improperly evaluated her impairments." (Doc. 23 at 8) (citing *Stubbs-Danielson v Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). Here, however, Plaintiff is arguing more than a re-weighing of the evidence; Plaintiff is arguing the ALJ completely overlooked an impairment.

Because the ALJ did not mention this impairment, the Court cannot know if the ALJ considered it but found it to not be severe at Step 2 or failed to appreciate this additional diagnosis. Because the Court cannot determine why the ALJ failed to include or disregard this alleged impairment, the Court finds there was error at Step 2 in failing to mention it.

### C. Plaintiff's Mental Residual Functional Capacity

Based on the foregoing errors, the Court has determined this case must be remanded for a de novo hearing. Accordingly, the Court need not address Plaintiff's final claim of

- 8 -

error regarding the ALJ's consideration and treatment of Plaintiff's mental residual functional capacity. Either party may make whatever arguments the deem appropriate on this issue on remand.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that the decision of the ALJ is reversed, this case is remanded for further proceedings including a de novo hearing and a new decision; the Clerk of the Court shall enter judgment accordingly.

Dated this 26th day of June, 2019.

James A. Teilborg
Senior United States District Judge